IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DONALD J. DOCKER, | ) | |
| | ) | |
| Plaintiff, | ) | 8:04cv128 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| BOB HOUSTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the following pending motions: (1) filing no. 48, the Motion for Summary Judgment filed by the defendants, Bob Houston, et al., which the plaintiff resists in filing no. 52, his Brief in Support of Motion for Jury Trial; (2) filing no. 55, the Motion to Compel filed by the plaintiff, Donald J. Dockery, an inmate at the Douglas County Correctional Center ("DCCC"); and (3) filing no. 58, the plaintiff's Motion for Emergency Injunctive Relief.  The plaintiff asserts federal civil rights claims pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs while in the defendants' custody at DCCC, in violation of the Eighth Amendment to the United States Constitution.

The plaintiff has a long history of hypertension, poorly controlled by prescription medications.  The record, while unclear, suggests that he may also suffer from cardiac arrhythmias and other heart problems.  On February 14 and 18, 2004, the plaintiff sought medical assistance, but instead, the plaintiff alleges that he encountered delay, obstruction and retaliation.

On February 14, 2004, the plaintiff approached a corrections officer working in the "bubble" on Module 6 at DCCC and stated that he needed to speak with a doctor because he was experiencing pain and tightness in his chest, that he had high blood pressure, and that "nitro" pills had been prescribed for him.  The guard instructed the plaintiff to fill out an

inmate interview request form ("kite") and failed to contact anyone to assist the plaintiff. Approximately one hour later, a nurse practitioner came to the unit with a medical cart to distribute medications. The plaintiff approached the nurse who gave the plaintiff his blood pressure medication, but when the plaintiff described his symptoms and asked for "nitro tablets," the guard accompanying the nurse instructed the plaintiff to fill out a kite.

On February 18, 2004, the plaintiff had a scheduled appointment with a cardiologist. That morning Officer Bennett was passing out breakfast trays when the escort came to take the plaintiff to the doctor. Bennett allegedly became verbally abusive to the plaintiff, demanding that the plaintiff hurry up and threatening to cancel the plaintiff's medical appointment. When the plaintiff argued back, Bennett wrote him up for misconduct and relegated the plaintiff to lockdown. However, the plaintiff's blood pressure spiked, and he collapsed in the hallway, at which point, he was taken by ambulance to the hospital. When the plaintiff returned to DCCC two days later on February 20, he was placed in lockdown for three days. His subsequent grievances were ignored, treated as trivial, and reflected reliance on Bennett's allegedly false statement that the plaintiff had refused to attend his cardiology appointment.

The Eighth Amendment to the United States Constitution requires jail officials to provide humane conditions of confinement, including adequate food, clothing, shelter, and medical care. Farmer v. Brennan, 511 U.S. 825, 832 (1994). A prisoner's Eighth Amendment rights are violated if prison officials show "deliberate indifference" to the prisoner's "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104-07 (1976).

The objective element of an Eighth Amendment claim requires a deprivation which, viewed objectively, is sufficiently "serious," that is, "the prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities;' or the prison

official must incarcerate the inmate under conditions 'posing a substantial risk of serious harm.'"   Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (citation omitted).   The subjective element of an Eighth Amendment claim requires that an official act with deliberate indifference to inmate health or safety.   Deliberate indifference means that the official both was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.   Farmer v. Brennan, 511 U.S. 825, 837 (1994).   Deliberate indifference describes a mental state more blameworthy than negligence. A plaintiff is not required to show that the defendant acted for the very purpose of causing harm or with knowledge that harm will certainly result.   Id., 511 U.S. at 835.   However, "deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct."   Olson v. Bloomberg, 339 F.3d 730, 736 (8th Cir. 2003).

## County Liability

The defendants in their official capacity, i.e., Douglas County, assert that the plaintiff cannot point to a custom or policy by which the County caused constitutional injury to the plaintiff.[1]   The federal civil rights laws contain no equivalent to the common law tort liability based on respondeat superior.   Therefore, under 42 U.S.C. § 1983, the County may not be held liable on principles of vicarious liability or respondeat superior for constitutional injuries allegedly inflicted by its employees, such as the officer who delayed the plaintiff's access to medical treatment on February 14, 2004, or Officer Bennett who obstructed the plaintiff's access to medical care on February 18, 2004.   See, e.g., Shrum ex rel. Kelly v.

---

[1]A suit against a public employee in his or her official capacity is actually a suit against the public employer.   Kentucky v. Graham, 473 U.S. 159, 165 (1985). In this case, an action against a Douglas County employee in his or her official capacity is considered, in law, a suit against the County itself, while an action against the same person in his or her individual capacity is considered a suit against the person and the person's own assets.

Kluck, 249 F.3d 773, 778 (8th Cir. 2001), *citing* Board of County Commissioners of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 405 (1997) and City of Canton v. Harris, 489 U.S. 378, 385 (1989):  "Rigorous standards of culpability and causation must be applied to ensure that [an employer] is not held liable solely for the actions of its employees .... The purpose of such a stringent standard is to prevent § 1983 liability from collapsing into state tort law or into respondeat superior liability, an intent not contemplated by § 1983."

"A plaintiff may establish municipal liability under § 1983 by proving that his or her constitutional rights were violated by an 'action pursuant to official municipal policy' or misconduct so pervasive among non-policymaking employees of the municipality 'as to constitute a "custom or usage" with the force of law.'"  Kuha v. City of Minnetonka, 365 F.3d 590, 603 (8th Cir. 2003).   See also Turney v. Waterbury, 375 F.3d 756, 761-62 (8th Cir. 2004):   "'In a section 1983 action, a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality.'...." (Citation omitted.)

However, the plaintiff clearly points to an official policy or widespread custom at DCCC which has the potential to cause injury to inmates in need of emergency medical care.  An inmate who believes he needs immediate medical treatment must contact a guard.  The record contains no evidence, and the defendants do not even allege, that DCCC guards receive any training whatsoever regarding symptoms of medical emergencies, even those as likely to be encountered as the symptoms of heart attack, stroke or insulin shock.  If an (untrained) guard believes an emergency exists, the guard proceeds to a supervisor within the corrections staff because the guards have no authority to contact medical staff directly.  So theoretically, medical services are available all day.  However, in reality, the inmate must fill out a kite and wait.

4

**Qualified Immunity**

The defendants also contend that, in their individual capacity, they are entitled to qualified immunity.  A government employee, sued for damages in his or her individual capacity pursuant to 42 U.S.C. § 1983, is entitled to qualified immunity unless the plaintiff shows that the actor violated a "clearly established" federal or constitutional right of the plaintiff.  For a right to be considered "clearly established," the plaintiff must demonstrate that a reasonable person would have known:  (a) of the plaintiff's right and (b) that the conduct at issue violated the plaintiff's right. See Anderson v. Creighton, 483 U.S. 635, 639-40 (1987):  "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 640.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful  . . .  but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. (citations omitted).

Qualified immunity is not appropriate in the circumstances of this case because of the obvious danger inherent in delegating medical emergency decisions to corrections staff untrained in medical symptomatology and unauthorized to make direct inquiries of medical staff.  Although, as discussed below, this is not a case in which disaster resulted from the defendants' conduct, the risk of injury is substantial and obvious.  Inmates such as the plaintiff have a clearly established constitutional right to immediate medical attention in a medical emergency.  A reasonable DCCC corrections official would understand that what he is doing violates that right when he directs an inmate complaining of heart attack or similar emergency to fill out a form, and the officer then takes no further action to assist the prisoner.

5

## Effects of Delayed Medical Care

Summary judgment will be granted in this case, nonetheless, because an essential element of the plaintiff's claim is missing in the summary judgment record. The plaintiff has not come forward with any evidence that the delays in medical care he experienced on February 14 and 18, 2004, actually resulted in any detrimental impact on the plaintiff's health. A plaintiff who complains that delay(s) in medical treatment violated the Eighth Amendment must present medical evidence that such delay(s) actually caused an adverse effect on the plaintiff's condition. See, e.g, Laughlin v. Schriro, 430 F.3d 927, 929 (8th Cir. 2005):

> To prevail on a claim that a delay in medical care constituted cruel and unusual punishment, an inmate must show both that: (a) the deprivation alleged was objectively serious; and (b) the prison official was deliberately indifferent to the inmate's health or safety .... When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, "the objective seriousness of the deprivation should also be measured 'by reference to the effect of delay in treatment.' "...To establish this effect, the inmate "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment . . . " .... **While Laughlin submitted evidence documenting his diagnosis and treatment, he offered no evidence establishing that any delay in treatment had a detrimental effect and thus failed to raise a genuine issue of fact on an essential element of his claim. As such, the grant of summary judgment in favor of the Appellees was proper** ....

(Emphasis added.) See also Dulany v. Carnahan, 132 F.3d 1234, 1243 (8th Cir. 1997) (summary judgment for defendants was properly granted in the absence of verifying medical evidence that the delays in treating the plaintiff's cardiac condition caused an adverse effect):

> Lana Anderson suffers from a cardiac condition causing fluctuations in her blood pressure. Prison officials once took her to a hospital for chest pains, but she complains that it took three calls to the prison physician to obtain authorization for a transfer to the hospital and that her condition continued to worsen. Medical records indicate that the emergency room physician determined that her chest pain was non-cardiac, and she was

6

instructed to continue her current medications.  She continued to complain of pain and was sent to a diagnostic center infirmary for observation. Records indicate that her blood pressure was monitored and she received treatment on several occasions. **The objective portion of the deliberate indifference standard requires a showing of "verifying medical evidence" that the defendants ignored an acute or escalating situation or that delays adversely affected the prognosis given the type of injury in this case .... Her medical needs were not disregarded, and she has no verifiable medical evidence to indicate that the delay in transferring her to the hospital adversely affected her prognosis.**

(Emphasis added.)

The record indicates that upon the plaintiff's admission to the hospital on February 18, 2004, he stayed for two days and was subjected to a battery of tests.  The hospital charged a huge bill, but no test revealed any injury to the plaintiff, including his heart or brain.  The plaintiff simply suffers from chronic hypertension which the medical staff at DCCC has been treating with regularity.  Thus, the defendants' conduct on February 14 and 18, 2004, while perhaps neglectful, did not cause injury to the plaintiff or violate the Eighth Amendment.

## Lockdown

The placement of the plaintiff in lockdown, i.e., segregation, while possibly inequitable in the circumstances, did not violate either the Due Process Clause of the Fourteenth Amendment or the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.  Therefore, insofar as the plaintiff alleges a separate claim for relief based on his confinement in segregation, summary judgment is granted for the defendants on any such claim.

Due Process

Inmates do not have a liberty interest in remaining free from segregation as prisoners at DCCC.  "The Fourteenth Amendment's Due Process Clause protects persons

against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 125 S.Ct. 2384, 2393 (2005). Thus, claims regarding the right to either procedural or substantive due process must begin with identification of a protected liberty or property interest. Singleton v. Cecil, 176 F.3d 419, 424-25, 425 n. 7 (8th Cir.) (*en banc*),cert. denied, 120 S.Ct. 402 (1999). A protected liberty interest may arise from either the Due Process Clause of the United States Constitution, itself, or from a state-created statutory entitlement. Hewitt v. Helms, 459 U.S. 460, 466 (1983); Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002) (citations omitted).

The Due Process Clause of its own force does not afford a prisoner a liberty interest in remaining in the general prison population. Lekas v. Briley 405 F.3d 602, 607 (7th Cir. 2005). See also Holly v. Woolfolk, 415 F.3d 678, 2005 WL 1661528 at *1 (7th Cir. 2005) ("being placed in segregation is too trivial an incremental deprivation of a convicted prisoner's liberty to trigger the duty of due process"). Accord Christianson v. Clarke, 932 F. Supp. 1178, 1182 (D. Neb. 1996) ("[T]he Due Process Clause itself does not protect any liberty interest in remaining free from administrative segregation or protective custody.").

An inmate's claim to a state-created liberty interest is governed by the Supreme Court's decision in Sandin v. Conner, 515 U.S. 472 (1995). "Sandin found no liberty interest protecting against a 30-day assignment to segregated confinement because [the assignment] did not 'present a dramatic departure from the basic conditions of [the inmate's] sentence.'" Wilkinson v. Austin, 125 S.Ct. 2384, 2394 (2005), *quoting* Sandin, 515 U.S. at 485. To demonstrate a liberty interest created by state law, the plaintiff must show that the protested conditions exceed the normal range and limits of custody and

8

impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin, 515 U.S. at 483-84.

In Nebraska, deprivation of good-time credit implicates a liberty interest sufficient to require due process.  Dailey v. Nebraska Dept. of Corr. Servs., 578 N.W.2d 869, 873 (1998).  See generally Wolff v. McDonnell, 418 U.S. 539, 557-58 (1974).  However, absent periods of extraordinary duration in segregation, the Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under Sandin."  Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002).   Accord Kennedy v. Blankenship, 100 F.3d 640, 642 n. 2, 643 (8th Cir.1996) (placement in punitive isolation was not an atypical and significant deprivation even though the prisoner faced restrictions in privileges regarding mail, telephone, visitation, commissary, and personal possessions). See also Phillips v. Norris, 320 F.3d 844, 847 (8th Cir. 2003): "We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."  The absence of contact visitation, exercise privileges, and chapel rights for 37 days did not constitute an atypical and significant hardship.  Id.

Cruel and Unusual Punishment

Regarding the placement of the plaintiff in lockdown, the Eighth Amendment is violated by the denial of "the minimal civilized measure of life's necessities," or by incarceration under conditions "posing a substantial risk of serious harm."  Simmons v. Cook, 154 F.3d 805, 807 (8th Cir. 1998) (citation and internal quotation marks omitted).  It is the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment forbidden by the Eighth Amendment.  Hope v. Pelzer, 122 S.Ct. 2508, 2514 (2002); Phillips v. Norris, 320 F.3d 844, 848 (8th Cir. 2003).

9

In evaluating the constitutionality of challenged prison conditions under Eighth Amendment standards, the duration of harsh or restrictive conditions constitutes an important factor.  See, e.g., <u>Rahman X v. Morgan</u>, 300 F.3d 970, 974 (8th Cir. 2002).  The three-day duration of the plaintiff's segregated confinement was neither "cruel" nor "unusual" in the sense of unnecessary and wanton infliction of pain.

For the foregoing reasons, the defendants' Motion for Summary Judgment will be granted.  All other pending motions will be denied as moot, and judgment will be entered accordingly.

THEREFORE, IT IS ORDERED:

1.      That filing no. 48, the defendants' Motion for Summary Judgment, is granted;

2.      That all other pending motions are denied as moot; and

3.      That a separate judgment will be entered accordingly.

DATED this 16th day of February, 2006.

BY THE COURT:

s/Laurie Smith Camp
Laurie Smith Camp
United States District Judge